LOUIS LEFFLER, PLAINTIFF-RESPONDENT, v. AETNA LIFE INSURANCE COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Submitted October 29, 1937—Decided January 26, 1938.

For the plaintiff-respondent, *Herbert R. Baer, Gerald McLaughlin* and *McCarter & English.*

For the defendant-appellant, *Edward A. Markley* and *Collins & Corbin.*

The opinion of the court was delivered by

CASE, J. The appeal is by the defendant insurance company from a judgment obtained by the plaintiff for disability benefits under a policy of accident insurance. The action was to recover for alleged total disability produced by bodily

injuries sustained directly and solely through accidental means independently of all other causes. The coverage was contained within Part II of the policy. Part II in its entirety is as follows:

"Weekly Indemnity

Total Disability. A. Or, if such injuries, directly and independently of all other causes, shall wholly and continuously disable the Insured from date of accident and prevent him from performing any and every duty pertaining to his occupation, the Company will pay the weekly indemnity hereinafter specified so long as he shall live and suffer such disability.

Partial Disability. B. Or, if such injuries, directly and independently of all other causes, shall continuously disable the Insured from date of accident and prevent him from performing one or more important daily duties pertaining to his occupation, or for like continuous disability following total disability, the Company will pay one-half of the amount per week payable for total disability for the period of such partial disability but not exceeding twenty-six consecutive weeks.

No payment of weekly indemnity shall be made in case of any loss enumerated in Part I, except as therein provided."

Appellant's first point is that the trial court erred in denying its motion for a directed verdict in its behalf. We find that there was evidence which, with the inferences reasonably arising therefrom, if believed by the jury, would have supported a finding of total disability under our cases. *Gross* v. *Commercial Casualty Insurance Company of Newark,* 90 *N. J. L.* 594; *Doherty* v. *American Employers' Insurance Co.,* 112 *Id.* 52. Therefore the case was one for the jury.

The next point on the appeal is that the trial court committed error in the admission and exclusion of testimony. We find otherwise. One of the rulings here objected to occurred during plaintiff's cross-examination of defendant's witness O'Mara, an employe of the Traveler's Insurance Com-

pany. He was asked on cross-examination: "Since the trial in the federal court of October 23d, 1936, the Traveler's have been paying on their policies, haven't they?" The Traveler's Insurance Company was not a party to the cause wherein the witness was being examined. The question was not relevant. It was, on motion, overruled. The defendant then asked, and was refused, a mistrial because of prejudice. The asking of the question was one of a series of incidents wrongfully injected into the trial by plaintiff's attorney, but at this stage the matter was within the discretion of the court. There was no error in the ruling.

Appellant's third point is that the remarks of plaintiff's attorney in summation were harmful and that the trial court erred in not instructing the jury to disregard them and in not granting a mistrial, requests for such judicial rulings having been duly made and exceptions to the refusals noted. In summation plaintiff's attorney stated to the jury: "You people here now, as a matter of fairness and justice, have this old man's life in your hands to-day. This is his day in court against the Traveler's, the Aetna, and the whole gang of them and, as an example——." Here defendant's counsel interrupted with his objections and motions. The objectionable remarks were the culmination of a number of assertions bordering close to the line of propriety. The earlier incidents should, at least, have served to place the arguing attorney upon guard.

Plaintiff is sixty-nine years of age. He was the complete owner of a business which he organized and over which he placed himself the president and general manager. He still holds those offices, but he alleges total incapacity to perform the duties thereof. He was injured by a fall as a result of which he uses, in walking, except for short distances, a mechanical brace supplemented by canes. The only injury is to the leg. The defendant insurer paid total disability benefits for a period of fourteen months following the accident and then discontinued. Thereupon plaintiff brought this suit to recover from that time forward. He admitted that he could perform some of his duties. The insurer denied total

disability and denied that plaintiff was disabled from performing those "executive duties only" which he had represented in his written application for insurance constituted his occupation; and it asserted that a specified bodily disease was a contributory factor in producing such disability as existed. Facts and arguments were presented *pro* and *con.* Thus an issue was framed and a case was presented which seem to us to be eminently of the sort our civil courts are designed to determine.

To say that the man's life, under such circumstances, was in the hands of the jury was, to put it mildly, an exaggeration. It was, let us say, a rhetorical overstatement, perhaps not serious in itself, the purpose of which was obviously to work upon the jury's sympathies and to make an introduction to the next statement which was, "This is his day in court against the Traveler's, the Aetna, and the whole gang of them." It was the plaintiff's day in court against the Aetna Insurance Company, not against the Traveler's Insurance Company, not against a gang of any kind, not against a regimented conspiracy of vice to outdo virtue, but to settle a substantially disputed question of insurance coverage. The suggestion that defendant, having undertaken, when plaintiff was sound of limb and body, to indemnify him against accidental disability, had now, when his plight was such as to put life itself in jeopardy, "ganged" up with other insurance companies, similarly obligated, in a concerted attempt to defeat his just claims, if true, would inflame almost any fair-minded person with a lively disgust against so mean an action; and the further suggestion that this was the jury's opportunity to take sides with the plaintiff against not only the defendant but also the Traveler's and whatever other unnamed companies were blindly alluded to as the "gang" was more than apt to invoke the hostility which so often is manifested where baneful emotions have been aroused. The court's refusal to adopt any protective measure, even to strike out the offensive words, could be interpreted by the jury as giving silent support. Perhaps counsel did not intend to stir up resentment on the part of, and to arouse the passions

of, the jury against the defendant insurance company, but such a result would follow naturally upon the invective in which he indulged. If it did follow, and perhaps it did, then that which was within neither the issues nor the proofs, and was not fair comment on either, became a factor in determining the verdict. When there is injected into the trial of a cause an element which has no place there and which is likely to have the effect of prejudicing the rights of one or the other of the litigants, it is the duty of the judge, so far as he reasonably can, to avoid such effect. The court's refusal, on request, to guard against pernicious results may be error. *Patterson* v. *Surpless,* 107 *N. J. L.* 305. We think that the defendant was entitled to have one or the other of its requests granted and that the denial was error.

Appellant's final point is that the court erred in certain passages of the charge to the jury and in refusing to charge defendant's requests. The first complaint under this point is that the court, in construing the words "executive duties only" as used in the contract, said: "We start with the proposition that a contract of insurance must be construed liberally and in favor of the insured where possible." That is not the rule, and it was, we think, unwise for the statement to be made to the jury, for, while it was the duty of the court and not of the jury to construe the contract, and the court performed that duty, it is unfortunate that immediately after the summation which we have heretofore discussed, the court should have overstated, in plaintiff's favor, the rule which, after all, was for the guidance of the court and not of the jury. The judicial function of a court of law is to enforce a contract as it is written. *Kupfersmith* v. *Delaware Insurance Co.,* 84 *N. J. L.* 271, 275. It is true that in order to uphold a contract of insurance the policy will be liberally construed in favor of the insured, and that where there is an ambiguity in the terms of the policy a meaning should be given which is most favorable to the insured (*Smith* v. *Fidelity and Deposit Co.,* 98 *Id.* 534, 536), but, in the absence of ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties

have used, to be taken and understood in their plain, ordinary and popular sense. *Imperial Fire Insurance Co.* v. *Coos County,* 151 *U. S.* 452. However, the words were, we think, sufficiently ambiguous to deserve construction. The sentence in the charge which immediately follows that quoted above is: "The words that are used must not be given a forced construction and are to be considered in the light of the usual accepted meaning of those words." That statement was sound law, and inasmuch as in the oral presentation it was doubtless understood to be, as it was doubtless meant to be, a limitation upon the sentence last preceding, and as the appellant makes no point of the court's actual construction, under this self imposed limitation, of the ambiguous expression, we think that there was no error under the presented heading.

A further subheading under this point, and the last that we deem it necessary to consider, is that the court erred in charging the jury, on the question of whether plaintiff could recover on his claim for total disability, that "the test is not whether he can do part of that job, but the test is whether he can do all of that work and every kind of work pertaining to that job." The leading cases in this state on the subject are the Gross and the Doherty cases, *supra.* In the former decision the policy provision was for total disability if the insured should be totally disabled and "wholly and continuously prevented from performing any and every kind of business pertaining to his occupation," &c. Mr. Justice Bergen, in writing the opinion, called attention to the proof which tended to show that the insured was disabled from performing the principal and major part of his occupation and approved the instruction given by the lower court that "the reasonable construction to be put upon the language used was, not that he (the insured) must be so disabled as to prevent him from doing anything whatsoever pertaining to his occupation, but that if he be so disabled as to prevent him from doing any and every kind of business pertaining to his occupation, he was entitled to recover." To say that an insured is not barred from recovery, as for total disability,

by the fact that he is able to do something pertaining to his occupation is quite different from saying that he can recover unless "he can do all of that work and every kind of work pertaining to that job." The shape in which, according to our understanding, the Gross case left that phase of the law was that a man insured against total disability, upon becoming disabled from performing a very considerable part of his usual business, is not necessarily barred from recovery because he was still able to do certain parts of his work.

Our comparatively recent decision in the Doherty case, the opinion wherein was written by Mr. Justice Donges, did not alter that trend of legal thought. The decision approved a charge below, the words of which, allowing for a slight change in the policy language, were those of the Gross case.

It will be observed by reference to the policy provision in the case at bar that the parties clearly provided for two contingencies, namely, total disability and partial disability. We can deduce nothing less from the court's charge than that it is of no consequence that the insured can do part of his work; that unless he is able to do *all* of his work and every kind of work pertaining to his job, he should be compensated as for total disability. That is not what the policy says and not, so far as we can discern, what it means. Otherwise, what significance is to be given that provision for partial disability? The contract should be construed as a whole and so, if possible, as to give significance to all of its parts. The charge, we think, was erroneous.

The judgment will be reversed to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 15.