George HAWKES III, Plaintiff,

v.

NORFOLK & WESTERN RAILWAY
COMPANY, Defendant.

No. 62926.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 29, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 28, 1994.

Application to Transfer Denied
June 21, 1994.

John G. Carlson, Daniel J. Cohen, Carlson & Hellmann, Edwardsville, IL, for appellant.

Dan H. Ball, James W. Erwin, Thompson & Mitchell, St. Louis, for respondent.

CRANE, Presiding Judge.

Plaintiff George Hawkes filed an action against his employer, defendant Norfolk & Western Railway under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, for damages as a result of injuries suffered in a fall. After a trial the jury found damages in the amount of $150,500 and assessed 25% fault against plaintiff. On appeal plaintiff asserts the trial court erred in submitting a mitigation of damages instruction. We affirm.

Plaintiff was employed by defendant from 1969 until December, 1988. On December 9, 1988 plaintiff, while working as a brakeman, tripped over a wire in a ditch along defendant's tracks and injured his knee. The injury required surgery in October, 1989 and arthroscopic surgery in November, 1990.

In 1988, his last year in defendant's employ, plaintiff earned approximately $45,000, working a sixty to seventy hour week at approximately $15 per hour. After the accident, plaintiff did not return to work with defendant. He did not work from the date of the accident until November 13, 1990 when he was hired as city clerk of Moline Acres, Missouri, earning $16,500 a year. By the time of trial he was earning approximately $20,500 in this position.

At trial plaintiff sought damages for past lost wages, future lost wages, the knee injury, and pain and suffering. The jury found plaintiff was damaged in the amount of $150,500 and assessed 25% fault to plaintiff and 75% fault to defendant.

On appeal plaintiff claims the trial court erred in giving a mitigation of damages instruction. He challenges both the sufficiency of the evidence to support the instruction and the failure of the instruction to instruct on burden of proof.

I.

We first address plaintiff's contention that the trial court erred in giving a mitigation of damages instruction because there was insufficient evidence to support the instruction. We find there was substantial evidence to support a mitigation instruction.[1]

As a preliminary matter, we note that neither party challenges the propriety of a mitigation instruction in an appropriate FELA case. Although there is no MAI FELA mitigation instruction, FELA cases adjudicated in state courts are governed by federal substantive law. *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303, 306 (1985). Accordingly, the propriety of jury instructions concerning the measure of damages in a FELA action is an issue determined by federal law. *Id.* Because mitigation affects the measure of damages, federal law also controls whether a mitigation instruction should be given. *See, Holley v. Missouri Pacific R. Co.*, 867 S.W.2d 610, 614–15 (Mo.App.1993).

Under federal law an employee has a duty to mitigate damages by returning to gainful employment as soon as reasonably possible. *Brown v. Chicago & North Western Transp. Co.*, 162 Ill.App.3d 926, 114 Ill. Dec. 165, 170, 516 N.E.2d 320, 325 (1987), citing *Taylor v. Denver & Rio Grande Western R. Co.*, 438 F.2d 351, 354 (10th Cir.1971). If there is evidence to support a failure to mitigate damages, the party asserting this position is entitled to an instruction on mitigation. *Wilson v. Consolidated Rail Corp.*, 875 S.W.2d 178 (Mo.App.E.D., March 22, 1994), citing *Trejo v. Denver & Rio Grande*

---

1. Plaintiff did not include the challenged instruction in the argument portion of his brief. Mo. R.Civ.P. 84.04(e) provides that "[i]f a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." Rule 84.04(c) is to be strictly enforced. *McMullin v. Borgers*, 806 S.W.2d 724, 727 (Mo.App.1991).

By failing to place the instruction in the argument portion of the brief, plaintiff has failed to preserve his points on appeal relating to this instruction. *Id.* at 727–28. However, since plaintiff set out the instruction in his statement of facts and defendant has briefed the issue on its merits, we will exercise our discretion to review this point for plain error.

*Western R. Co.,* 568 F.2d 181, 184 (10th Cir.1977).

The submission of an instruction will be upheld if supported by any substantial evidence. *Jordan v. Abernathy,* 845 S.W.2d 86, 89 (Mo.App.1993); *Oldaker v. Peters,* 817 S.W.2d 245, 251–52 (Mo. banc 1991). Substantial evidence is that evidence which, if true, is probative of the issues and from which the jury can reasonably decide the case. *Elfrink v. Burlington Northern R. Co.,* 845 S.W.2d 607, 611 (Mo.App.1992). In reviewing the submission of an instruction, we view the evidence and the inferences therefrom in the light most favorable to submission of the instruction and disregard all evidence that does not support the instruction. *Id.*

Plaintiff argues he undertook reasonable and timely efforts to obtain alternate employment. He points to evidence that he forwarded 125–150 resumes to prospective employers before obtaining the city clerk position which he held at trial, that he sought vocational counseling with Dr. Samuel Bernstein who encouraged him to hold onto his present job, and that he refused offers of reemployment with defendant in clerical or other positions because he was concerned about layoffs, loss of seniority, probationary employment, and relocation. Plaintiff further argues that there was no evidence that other employment was available or that plaintiff could have obtained other employment within any particular period of time.

However, there was substantial evidence from which the jury could conclude that plaintiff did not make a reasonable effort to obtain gainful employment. Plaintiff, who was forty years old at the time of trial, had nineteen years' of railroad experience as a brakeman and switchman, some management experience, and was highly educated. He had a bachelor's degree and a master's degree in business administration. He had worked for two retail stores in management positions and for a scheduling company as a management consultant. In addition, prior to the accident, defendant had given plaintiff nine to twelve months of training in a management position before plaintiff decided he did not want to be a management employee and returned to his switchman position. Plaintiff also had prior experience as an insurance salesman.

After plaintiff's surgery in 1990, defendant provided plaintiff the assistance of a rehabilitation nurse. Initially, plaintiff would not respond to the nurse's attempts to contact him. When he did talk to her, he would not give her permission to confer with his physician about his knee. She had told him that to assist him, she would have to know what his doctor's recommendations were. Plaintiff testified that he refused to work with the nurse.

On April 12, 1991, five months after plaintiff's 1990 surgery, defendant wrote to plaintiff to encourage him to make a trial return to work as a brakeman on an evaluated basis at defendant's training center in McDonough, Georgia. The letter advised plaintiff he would be required to wear a properly fitted knee brace for this trial period. Plaintiff did not respond to this offer until February, 1992. In a telephone call and in a letter dated February 28, 1992, defendant informed plaintiff that in order to return to work he needed to provide defendant with a medical release. Plaintiff never provided defendant with a medical release.

Dr. Joseph Williams, an orthopedic surgeon, testified that if plaintiff had participated in an appropriate period of three to six weeks of rehabilitation and proper bracing, he could have safely returned to work as a brakeman without any problems. Although plaintiff participated in physical therapy following his first surgery in 1989, he had not participated in any subsequent supervised therapy or regular ongoing unsupervised therapy. Further, he did not follow the therapy program Dr. Williams recommended to him to improve the condition of his knee.

In summer, 1991 defendant sent an employee to interview plaintiff about other positions with defendant. Plaintiff told him he was not interested in considering positions outside the St. Louis area.

In fall, 1991 defendant offered plaintiff a clerk position at its facility in Wentzville, Missouri which required plaintiff to take a typing test and to complete a ten day proba-

tionary period. Defendant offered to assist plaintiff in learning how to type. The starting pay was $10.40 per hour plus annual contractual raises of 5%. After five years plaintiff would earn about $14.00 per hour. Overtime at time and a half was available with the position. Defendant offered testimony that clerks had the opportunity to advance into management positions and, with his operating experience and educational background, plaintiff would have been a highly qualified candidate for advancement. Plaintiff could have transferred his previously earned vacation and retirement benefits if he had taken the clerk position. Plaintiff expressed concerns about the clerk position because of job security. However, defendant put on testimony that the job was secure, that the person who took the position offered plaintiff was still working, and that persons in similar positions had not been laid off. Defendant also told plaintiff that there were vacancies at the St. Louis terminal and offered to show him those positions. Plaintiff turned down this offer.

In December, 1991 defendant also offered plaintiff the services of a vocational counselor to help him find a job outside the railroad. The vocational counselor telephoned and wrote plaintiff several times before he responded. He refused her offer. He told her he was happy with the job he had, did not want to be "job jumping," and wanted to work in St. Louis.

Plaintiff did not use any private employment agencies or counselors to find a job. Other than with defendant, plaintiff did not interview for any other jobs after obtaining his city clerk position. On his lawyer's advice, plaintiff saw Dr. Samuel Bernstein, a licensed psychologist vocational expert, on one occasion. Dr. Bernstein did not provide plaintiff any help in finding other employment.

Whether a plaintiff made a reasonable effort is a question of fact for the jury. *Trejo,* 568 F.2d at 184. In *Brown* the court held that defendant's evidence raised a factual question on the failure to mitigate from which a jury might reasonably conclude an employee was indifferent to alternative employment where: (1) he refused to cooperate with the employer's efforts to place him in another position within the company; (2) he spurned the employer's plans to provide free rehabilitation and counseling services; and (3) he shunned the employer's offers to find vocational training calculated to assist him in obtaining alternative employment. 114 Ill. Dec. at 170, 114 Ill.Dec. at 170, 516 N.E.2d at 325.

Likewise in this case, there was substantial evidence from which the jury could conclude there was a failure to mitigate damages. The trial court did not commit error, plain or otherwise, in allowing defendant to submit a mitigation instruction to the jury. This point is denied.

## II.

■ Plaintiff next contends the mitigation instruction given by the court was erroneous because it failed to inform the jury it was defendant's burden to prove failure to mitigate. Plaintiff did not object to the mitigation instruction on this ground at trial or in his motion for new trial. The version of Rule 70.03 which was in effect at the time of trial required specific objections to instructions be made in the motion for new trial unless made at trial. Rule 78.07 provides that allegations of error must be included in a motion for new trial in order to be preserved for appellate review. Plaintiff's failure to make specific objections at either trial or in the motion for new trial deprived the trial court of the opportunity to correct its own errors and presents nothing for review on appeal. *Mar–Kay Plastics, Inc. v. Alco Standard Corp.,* 825 S.W.2d 381, 384–85 (Mo.App.1992); *Snapp v. Ryder,* 713 S.W.2d 630, 632–33 (Mo.App. 1986).

Affirmed.

KAROHL and CRAHAN, JJ., concur.